# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| SAMUEL K. LIPARI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 07-0849-CV-W-FJG |
| | ) |
| GENERAL ELECTRIC COMPANY, et al., | ) |
| | ) |
| Defendants. | ) |

# ORDER

Currently pending before the Court are several motions to dismiss filed by the various defendants, GE, Seyfarth Shaw LLP, Jeffrey R. Immelt, Heartland Financial Group, Christopher McDaniel, Stewart Foster and Bradley Schlozman. Plaintiff has also filed a Motion to Amend his Complaint to add two new defendants.

## I. BACKGROUND

On November 9, 2007, defendants removed the present case to this Court. Plaintiff initially filed this suit in Jackson County, Missouri alleging a single state law claim for breach of contract related to an alleged purchase agreement for a building located at 1600 N.E. Coronado Drive, Blue Springs, Missouri. Plaintiff's petition was not removable when it was originally filed, because it did not assert a federal question and there was no diversity. On October 10, 2007, plaintiff filed a "Motion for Leave to Amend Under RSMO 55.33." Plaintiff in his motion sought leave to add new parties and new claims, including claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, *et seq.* and the Hobbs Act, 18 U.S.C. § 1951. The state court granted plaintiff's Motion to Amend on October 31, 2007. On December 7,

2007, plaintiff filed his Amended Complaint in this Court. Plaintiff in his 403 paragraph, sixty-eight page Complaint alleges that he, through his now dissolved corporation, "made a contract with the defendants to sell GE Transportation's remaining ten year lease at a deep discount benefitting GE in exchange for GE's funding of the plaintiff's purchase of the building though GE's business lending subsidiary, GE Capital." (¶ 45). Plaintiff alleges that the GE entities knew that plaintiff's company, Medical Supply Chain ("MSC"), intended to use the transaction to capitalize its entry into the hospital supply market and that it was unable to obtain capital through conventional means. (¶ 27). Plaintiff alleges that the GE defendants partially performed the terms of the contract, but then subsequently breached the contract. Plaintiff alleges that "GE caused the breach of the contracts when GE Medical and the electronic hospital supply marketplace GHX LLC created by GE interfered to prevent Medical Supply from getting capitalization through the contract to enter the hospital supply marketplace." (¶ 29). Plaintiff alleged that "GHX, GE and GE Medical are openly part of an unlawful hospital supply cartel with Novation LLC that had previously prevented Medical Supply from capitalizing its entry into the hospital supply market." Id.

This is not the first time that plaintiff has brought claims of this sort against these defendants. In November 2002, Medical Supply Chain[1] filed suit against US Bancorp and others in federal court in Kansas. Medical Supply Chain, Inc. v. US Bancorp, NA, et al., No. 02-2539-CM. In that case, MSC asserted various state law claims, antitrust claims under the Sherman and Clayton Acts and violations of the Hobbs Act. MSC

---

[1] The dissolved corporation of which Mr. Lipari was the chief executive officer.

alleged that US Bancorp and the other defendants refused to provide financing to MSC in order to prevent MSC from entering into the healthcare supply market, and perpetuating their monopoly over this market. On June 16, 2003, the Court dismissed MSC's Complaint in US Bancorp I, stating that some of MSC's allegations were "completely divorced from rational thought." See Medical Supply Chain, Inc. v. US Bancorp, NA, et al., No. 02-2539-CM, 2003 WL 21479192 at *8. MSC appealed the dismissal to the Tenth Circuit, who affirmed the case and remanded it to the District Court with directions to impose sanctions against plaintiff and plaintiff's counsel for prosecution of a frivolous appeal. See Medical Supply Chain v. US Bancorp NA, et al., 2004 WL 2504653 (10th Cir. Nov. 8, 2004).

On June 18, 2003, MSC filed a lawsuit against the GE defendants in federal court in Kansas. Medical Supply Chain, Inc. v. General Electric Company, et al., No. 03-2324-CM ("GE I Lawsuit"). In that suit MSC claimed that the GE defendants prevented MSC's entry into the health care supplier/distribution market by refusing to sublease a building or provide financing to MSC. He also alleged that the GE defendants violated federal antitrust laws pursuant to the Sherman Act and the Robinson-Patman Act. He also asserted state common law claims against the defendants. On January 29, 2004, the court dismissed all of MSC's antitrust claims with prejudice. Medical Supply Chain, Inc. v. General Electric Company, et al., 2004 WL 956100 (D.Kan. Jan. 29, 2004).

On March 9, 2005, MSC filed suit in the Western District of Missouri against Neoforma, Inc., Novation, LLC, US Bancorp, and various other corporate entities and individuals. Medical Supply Chain, Inc. v. Neoforma, Inc., et al., No. 05-2010-CV-W-

3

ODS. The case was transferred to the District of Kansas. Plaintiff alleged that the defendants conspired to restrain trade in the hospital supply market. He asserted claims under the Sherman Act, Clayton Act, the Declaratory Judgment Act, RICO, the Hobbs Act and the USA Patriot Act, in addition to numerous common law claims. On March 7, 2006, the district court dismissed all of MSC's federal claims with prejudice and declined to retain jurisdiction over the state law claims. Medical Supply Chain, Inc. v. Neoforma, Inc. et al., 419 F.Supp.2d 1316, 1335-1336 (D.Kan. 2006). The Court imposed sanctions against plaintiff's counsel, Bret Landrith as well as MSC's CEO, Mr. Lipari.

On November 28, 2006, plaintiff filed another lawsuit against US Bancorp NA and U.S. Bank NA in the Circuit Court of Jackson County, Missouri, alleging the same state law claims that were dismissed without prejudice in U.S.Bancorp I. The lawsuit was removed to this Court and subsequently transferred to the U.S. District Court for the District of Kansas where it is currently pending.

## II. STANDARD

The Supreme Court recently issued a new standard to apply when considering motions to dismiss. In Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007), the Supreme Court rejected the "no set of facts" language from Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court stated:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . .on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . .

4

Id. at 1964-65 (internal citations and quotations omitted). The Court went on to note that, "of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Id. at 1965 (internal citations and quotations omitted). The Court emphasized that "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, the complaint must be dismissed." Id. at 1974.

### III. DISCUSSION

**A. RICO Claims**

Title 18 U.S.C. § 1964 states: "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit . . . except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962." Title 18 U.S.C. § 1964(c). Defendants move to dismiss plaintiffs' RICO claims on many grounds, but the ground which the Court will address first and which is dispositive, is standing.

> In a federal RICO action, 'the plaintiff only has standing, if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation.' Sedima v. Imrex, Co., Inc., 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). 'Thus, the two requirements for RICO standing are (1) an injury to 'business or property' (2) caused 'by reason of' a RICO violation.' Hamm v. Rhone-Poulenc Rorer Pharmaceuticals, Inc., 187 F.3d 941, 951 (8th Cir.1999).

5

Geraci v. Women's Alliance, Inc., 436 F.Supp.2d 1022, 1038 (D.N.D. 2006).

The Court in Birdnecklace v. Steele, No. 07-5008-AWB, 2008 WL 1766720, *5 (D.S.D. Apr. 11, 2008), noted that "[t]he United States Supreme Court has further clarified that this provision contains a 'directness' requirement, restricting possible plaintiffs only to those whose injuries were proximately caused by defendant's racketeering conduct." Courts have also limited plaintiffs to recovering losses which are concrete and which are capable of measurement. "[A] showing of injury requires proof of concrete financial loss, and not mere injury to a valuable intangible property interest." Steele v. Hosp. Corp. Of America, 36 F.3d 69, 70 (9th Cir. 1994)(internal citations and quotations omitted); "Injury to mere expectancy interests or to an 'intangible property interest' is not sufficient to confer RICO standing." Price v. Pinnacle Brands, Inc., 138 F.3d 602, 607 (5th Cir. 1998). "Defendants are correct in asserting that a RICO plaintiff may not recover for speculative losses or where the amount of damages is unprovable." Trustees Of Plumbers and Pipefitters Nat'l Pension Fund v. Tansworld Mech.,Inc., 886 F.Supp. 1134, 1146 (S.D.N.Y.1995). "If the damages cannot be ascertained, then there is no lawful way to compensate the plaintiff. Thus, the courts regularly have held that a plaintiff who alleges injuries that are 'indefinite and unprovable' does not have standing under, and cannot recover damages pursuant to, RICO." World Wresting Entertainment, Inc. v. Jakks Pacific, Inc., 530 F.Supp.2d 486, 521 (S.D.N.Y. 2007).

In his Complaint, petitioner states only that he was repeatedly injured by the defendants' predicate acts, he would not have been injured but for their violations of § 1962, he was injured as a proximate cause of their violations of § 1962 and he was injured in his business and property from their violations. He states that he is entitled to

6

four hundred and fifty million dollars, which after trebling under 18 U.S.C. § 1964 would amount to one billion, three hundred and fifty million dollars. (Complaint ¶¶ 392-396). In his Suggestions in Opposition, plaintiff states that he has been injured by the loss of money from the sale of the lease to GE and GE Transportation, the loss of the sale of hospital supplies each day that the defendants kept him from doing business, and injury to his business reputation. However, plaintiff does not attempt to quantify or measure these damages in any way. He also offers no evidence or support for his claim that his RICO damages total $450 million dollars. In World Wresting Entertainment, 530 F.Supp.2d 486, the licensor of videogames and toys brought an action against licensees and licensing agents, alleging that as a result of defendants racketeering acts, it was deprived of the intangible right of honest services of the agents and received lower royalty rates from its licenses. Plaintiff in that case alleged that it was denied the business opportunity of between 50 - 60% more in royalties from a non-corrupt licensing arrangement. The Court in that case found that plaintiff had no ability to project what would have come out of the bidding processes for the various licenses. Additionally, the Court found that plaintiff had no way of assessing the profits any winning licensee could have produced for plaintiff, as that was dependent on the vendor manufacturing and marketing the videogames and toys on a scale equal to or better than the bids that Plaintiff accepted. The Court in that case concluded that there was no plausible set of facts which would show that the plaintiff has suffered a "quantifiable and cognizable injury under RICO." Id. at 524. Similarly, in the instant case, the Court finds that the plaintiff's allegations regarding his injuries are even less specific, particularly since plaintiff had not even begun operating his business at the time he

7

alleges that the actions occurred.  As defendants observe in their reply suggestions, there are numerous other factors such as poor marketing, lack of vendor contracts, inefficiencies, sub-par product offerings, timing of entry into the marketplace and lack of experience in the industry that could have contributed to Medical Supply Chain's difficulties in getting started.  The Court after reviewing plaintiff's Complaint and the pleadings related to the various Motions to Dismiss, determines that plaintiff's alleged injuries are "indefinite and unprovable" and he has no standing to assert a claim under the RICO statute.  Accordingly, the Court hereby **GRANTS** defendants' Motions to Dismiss plaintiff's RICO claims[2].  This determination would also apply to plaintiff's RICO conspiracy claims.  See World Wresting Entertainment, 530 F.Supp.2d at 530.

### B. Hobbs Act Claim

In his Complaint, plaintiff alleges that the defendants committed violations of the Hobbs Act, 18 U.S.C. § 1951.  (Complaint ¶ 181).  However, when defendants point out that there is no private right of action available under this statute, plaintiff states in his Suggestions in Opposition that he is not claiming a cause of action under this statute, but instead is claiming a cause of action under 18 U.S.C. § 1962(c) where "Hobbs Act extortion is expressly stated and enumerated as a predicate act for a private cause of action under 18 U.S.C. § 1961(1)." (Plaintiff's Suggestions in Opposition, p. 27). Regardless of whether plaintiff is pleading the Hobbs Act as a predicate act or stating it as a separate claim, the Court has determined  that plaintiff has no standing to assert a

---

[2] The defendants raised numerous other arguments in their Motions to Dismiss. However, because the standing issue is dispositive of all of plaintiff's claims, the Court finds no reason to address these other arguments.

RICO action and there is no private right of action for a violation of the statute. Accordingly, any claims that plaintiff may have raised under this statute are hereby **DISMISSED**.

### C. State Law Claims

As the Court has now dismissed all of plaintiff's federal claims, the Court declines to retain jurisdiction over plaintiff's state law claims. Accordingly, the Court hereby **DISMISSES** plaintiff's state law claims.

## IV. CONCLUSION

Accordingly, for the reasons stated above, the Court hereby **GRANTS** GE's Motion to Dismiss (Doc. # 11), Seyfarth Shaw's Motion to Dismiss (Doc. # 16); Jeffrey Immelt's Motion to Dismiss (Doc. # 19); Heartland Financial Group, Inc., Christopher McDaniel and Stuart Foster's Motion to Dismiss (Doc. # 32) and Bradley Schlozman's Motion to Dismiss (Doc. # 56).

The Court **GRANTS** the Moving Defendants' Motion for Leave to File Reply Brief in Excess of Local Rule Page Limitation (Doc. # 45); **GRANTS** Jeffrey Immelt's Motion to Join the Moving Defendants' Motion for Leave to File Reply Brief in Excess of Local Rule Page Limitation (Doc. # 46).

The Court **DENIES** as **MOOT** Heartland Financial Group, Inc. and Christopher McDaniel's Motion for Extension of Time to File Answer to Amended Complaint (Doc. # 27); **DENIES** plaintiff's Motion for Service by U.S. Marshal (Doc. # 30); **DENIES** plaintiff's Motion to Amend his Complaint (Doc. # 49); **DENIES** as **MOOT** defendants' Motion to Stay Briefing (Doc. # 51) and **DENIES AS MOOT** defendant Schlozman's

Motion for Extension of Time to File Answer (Doc. # 55).


Date: 7/30/08  
Kansas City, Missouri

**S/ FERNANDO J. GAITAN, JR.**  
Fernando J. Gaitan, Jr.  
Chief United States District Judge

10